IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **LARRY D. JOHNSON, #M22661,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 24-cv-02368-SMY |
| ) | |
| **RYAN SUTTERER,** ) | |
| **ANTHONY WILLS, and** ) | |
| **WEXFORD HEALTH SOURCE, INC.,** ) | |
| ) | |
| **Defendants.** ) | |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Larry Johnson, an inmate in the custody of the Illinois Department of Corrections (IDOC) currently incarcerated at Menard Correctional Center, filed this action pursuant to 42 U.S.C. § 1983 for alleged constitutional deprivations stemming from the denial of hard shell contact lenses. (Doc. 1, pp. 1-76). He seeks monetary and injunctive relief.[1] *Id*. at 76. The Complaint is now subject to preliminary review under 28 U.S.C. § 1915A, which requires this Court to dismiss any portion that is legally frivolous or malicious, fails to state a claim for relief, or seeks money damages from an immune defendant. *Id*.

## The Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 1, pp. 14-19): Plaintiff suffers from an eye condition known as "keratoconus," in which the cornea thins and bulges outward into a cone shape over time and causes blurred vision and light sensitivity.[2] Plaintiff's condition necessitates the use of hard shell contact lenses. Without them, he is legally blind. *Id*.

---

[1] Plaintiff specifically seeks a prison transfer. Because he was transferred after filing suit, this request for injunctive relief is moot.
[2] *See* https://www.mayoclinic.org/diseases-conditions/keratoconus/symptoms-causes (visited Oct. 22, 2025).

1

Plaintiff has been unable to obtain proper medical care for his condition since transferring to Menard on October 22, 2022. He repeatedly requested treatment from the prison's eye doctor, Dr. Ryan Sutterer, but his requests were ignored. *Id*. at 14. Plaintiff met with Dr. Sutterer on several occasions, but the doctor seemed unfamiliar with his condition each time. Plaintiff had to explain the condition at every appointment. As he did so, Plaintiff observed his medical file sitting open on Dr. Sutterer's lap and noticed the doctor "always" became upset by his explanation. *Id*.

Plaintiff reported that he was diagnosed with keratoconus in 2018. *Id*. at 15. While he was an inmate at Pontiac Correctional Center, he was sent out for treatment with Dr. Sasha Radford at Pontiac Family Eye Care. Dr. Radford diagnosed the condition and prescribed hard contact lenses. He received them in February 2019. Dr. Radford recommended replacing the contacts every year because his condition could worsen. She also cautioned him against changing prescription contact cleaning solution without consulting an eye care specialist first. Dr. Radford told him to report any complications. After relaying this information to Dr. Sutterer, Plaintiff added that he was still using the same pair of hard contact lenses he received in 2019. *Id*. at 14-15. He requested a new pair because his vision was worse. *Id*. at 15. Dr. Sutterer either denied or disregarded the request.

Plaintiff filed grievances to complain on May 22, 2023 and May 31, 2023. In response, he received new prescription contact cleaning solution but no contact lenses. Dr. Sutterer also referred Plaintiff to an offsite eye care provider in January 2024 and met with Plaintiff to discuss the status of his condition before sending him out for treatment. During this appointment, Plaintiff found himself correcting the prison eye doctor after being fed "misinformation" by him. *Id*. Dr. Sutterer became visibly upset and told Plaintiff to stop telling him how to do his job. *Id*. at 16. At the offsite appointment in January 2024, Plaintiff signed medical release forms so the provider could obtain his records from Pontiac Family Eye Care.

In February 2024, Dr. Sutterer met with Plaintiff to discuss the offsite appointment. Afterwards, Plaintiff submitted multiple requests for a follow-up appointment with the offsite provider to "complete the process of obtaining the new contact lenses." *Id*. He reported additional problems with his vision. Plaintiff was scheduled to see an offsite eye care specialist on March 25, 2024. *Id*. at 17. The appointment was cancelled.

Dr. Sutterer periodically approved a new bottle of prescription contact solution. When the solution changed in May 2024, Plaintiff filed a grievance to complain on May 26, 2024. Plaintiff was scheduled for an appointment with an offsite provider on May 31, 2024, and this appointment was also canceled. Between May 31, 2024 and July 24, 2024, prison staff informed Plaintiff that his medical furloughs were cancelled due to a "staff shortage." *Id*. Plaintiff was again scheduled for an appointment with an offsite provider on July 24, 2024. This appointment was also cancelled.

Dr. Sutterer exhibited deliberate indifference to Plaintiff's keratoconus and retaliated against him for filing grievances by refusing to see him between February 2024 and October 2024, refusing to send him for treatment with an offsite eye care provider, changing his prescription contact solution twice without consulting him, and failing to prioritize his treatment while his vision deteriorated. *Id*. at 18.

Warden Anthony Wills exhibited deliberate indifference to Plaintiff's serious eye condition by denying numerous emergency grievances seeking treatment and new hard contact lenses for his deteriorating vision. Warden Wills supervised the prison eye doctor and failed to investigate Plaintiff's complaints of delays in onsite and offsite care. *Id*. at 19. Plaintiff faults the warden for turning a blind eye to the inadequate care. *Id*.

Wexford Health Source, Inc., caused the denial of proper eye care by adopting a policy of understaffing the prison with medical providers and refusing to authorize a referral for treatment

with an outside specialist.  *Id*. at 19-20.

## Discussion

Based on the allegations in the Complaint, the Court designates the following claims:

Count 1: First Amendment retaliation claim against Dr. Sutterer for responding to Plaintiff's grievances about the denial of adequate vision care by refusing to meet with him, treat him onsite, or ensure offsite treatment even as his vision deteriorated.

Count 2: Eighth Amendment deliberate indifference claim against Dr. Sutterer for denying Plaintiff adequate medical care for his serious eye condition (keratoconus) at Menard.

Count 3: Eighth Amendment deliberate indifference claim against Warden Wills for ignoring, disregarding, or turning a blind eye to Plaintiff's complaints of inadequate vision care for his serious eye condition (keratoconus) and deteriorating vision.

Count 4: Eighth Amendment deliberate indifference claim against Wexford for denying adequate vision care for Plaintiff's keratoconus through its policy, custom, or practice of understaffing the facility with medical providers and specialists while also refusing to send inmates out for necessary treatment.

Any other claim that is mentioned in the Complaint but not addressed herein is considered dismissed without prejudice as inadequately pled under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## Count 1

Prison officials may not retaliate against an inmate for exercising his First Amendment rights by filing grievances to complain about the conditions of his confinement.  *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020).  To articulate a retaliation claim, a plaintiff must sufficiently allege that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter future First Amendment activity; and (3) his First Amendment activity was "at least a motivating factor" in the defendant's decision to take retaliatory action against him. *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (citing *Bridges v. Gilbert*, 557 F.3d 541, 546

(7th Cir. 2009)).  According to the allegations, Dr. Sutterer responded to Plaintiff's grievances by refusing to meet with him, treat his condition, or ensure that he received treatment with an offsite provider.  These allegations are sufficient to state a viable claim of retaliation against Dr. Sutterer in Count 1.

### Counts 2, 3, and 4

A plaintiff bringing an Eighth Amendment claim for the denial of medical care must describe: (a) an objectively serious medical need; and (b) deliberate indifference to that condition by each defendant.  *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 457-58 (7th Cir. 2020).  An objectively serious medical need is one that has been diagnosed by a physician as requiring treatment or one where the need for treatment would be obvious to a lay person.  *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).  Deliberate indifference occurs when a defendant knows about and disregards an excessive risk to inmate health.  *Id*.

Keratoconus is sufficiently serious to support this claim.  Plaintiff was diagnosed with the condition in 2018, prescribed hard contact lenses in 2019, and ordered to return for new hard contact lenses every year thereafter.  He never received new ones.  Without proper contact lenses, Plaintiff alleges that his vision deteriorated and he is now legally blind.  *See Donald*, 982 F.3d at 457-58 (keratoconus and glaucoma are sufficiently serious to support Eighth Amendment claim).  *See also Nunez v. Spiller*, No. 15-cv-00514-SMY, 2015 WL 3419513, at *2 (S.D. Ill. May 28, 2025) (keratoconus deemed objectively sufficiently serious under Eighth Amendment); *Marshall v. Nickel*, No. 06-cv-617-C, 2007 WL 5582139, at *5 (W.D. Wis. Jan. 29, 2007) (same).

To state a claim for deliberate indifference, a plaintiff must allege a defendant acted intentionally or with criminal recklessness when treating him.  Deliberate indifference may also occur where a prison medical provider denies an inmate prescription medication, fails to follow

the recommendation of a specialist, or persists in a course of treatment known to be ineffective. *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011). Treatment delays that exacerbate a serious medical condition may also constitute deliberate indifference. *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). Here, Plaintiff alleges Dr. Sutterer denied him treatment that was ordered by an offsite specialist, refused to issue him new contact lenses, failed to ensure his treatment with an offsite eye doctor, and disregarded his complaints of vision loss. Based on these allegations, Count 2 will proceed against Dr. Sutterer in his individual capacity.

An inmate's correspondence with a grievance official may establish a basis for liability for deliberate indifference when it provides "sufficient knowledge of a constitutional deprivation." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015) (citing *Vance v. Peters*, 97 F.3d 987, 992-93 (7th Cir. 1996)). An official who is "alerted to an excessive risk to inmate safety or health through a prisoner's correspondence" may be liable for an Eighth Amendment violation where the official possesses authority to stop the violation and fails to exercise that authority. *Id*. This includes instances when an inmate's grievances fall on "deaf ears." *Id*. (*Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997)). Here, Plaintiff alleges Warden Wills turned a blind eye to his complaints of progressive keratoconus, vision loss, and denial of care when he denied emergency grievances without further investigation. He has stated a colorable claim in Count 3 against the warden in his individual capacity.

The Eighth Amendment claim against Wexford requires Plaintiff to allege that a policy, custom, or practice attributable to the private medical corporation caused a violation of his constitutional rights. *Shields v. Illinois Dept. of Corr.*, 746 F.3d 782,786 (7th Cir. 2014) (citing *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978)). Plaintiff claims Wexford provided inadequate medical staff at the prison while also denying referrals for offsite treatment. However,

6

Plaintiff's allegations contradict this claim as he also alleges that: (a) Dr. Sutterer was available to see him onsite and simply refused; (b) Dr. Sutterer nevertheless referred him for treatment with an offsite provider on at least three occasions (March, May, and July 2024); and (c) staff informed him that medical furloughs would be denied due to "*prison* staff" shortage and not a medical staff shortage.  Thus, Plaintiff's allegations do not support a claim that Wexford's policies, customs, or practices caused the deprivation alleged in the Complaint.  Accordingly, Count 4 will be dismissed for failure to state a claim for relief against Wexford.

## Disposition

The Complaint (Doc. 1) survives screening under 28 U.S.C. § 1915A, as follows:

- **COUNTS 1** and **2** will proceed against **RYAN SUTTERER**, in an individual capacity.
- **COUNT 3** will proceed against **ANTHONY WILLS**, in an individual capacity.
- **COUNT 4** against **WEXFORD HEALTH SOURCE, INC.** is **DISMISSED** without prejudice for failure to state a claim.

Plaintiff's Motion for Status (Doc. 20) is **TERMINATED**.

The Clerk shall prepare for Defendants **RYAN SUTTERER** and **ANTHONY WILLS**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer

shall furnish the Clerk with that Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Under Administrative Order No. 244 and Local Rule 8.2, Defendants should only respond to the issues stated in this Merit Review Order.**

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. § 1915, he will be required to pay the full amount of the costs, even if he is granted *in forma pauperis* status. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**The Clerk's Office is DIRECTED to TERMINATE WEXFORD HEALTH SOURCE, INC. as a defendant in CM/ECF and ENTER the Court's standard HIPAA-Qualified Protective Order.**

**IT IS SO ORDERED.**

**DATED:** October 23, 2025        *s/ Staci M. Yandle*
                                   **STACI M. YANDLE**
                                   **United States District Judge**

## Notice to Plaintiff

Once identified, the Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter their appearances and file Answers to your Complaint. It will likely take at least **60 days** *from the date they are served with this lawsuit* to receive the Answers, but it is entirely possible that it will take **90 days** or more. When Defendants have all filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' attorneys have filed appearances will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.